UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

OMRI MOTA,
    Plaintiff,

v.                                     C.A. No. 19-562-JJM-PAS

THE OKONITE COMPANY, INC.,
    Defendant.

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Omri Mota ("Mota") worked at Defendant The Okonite Company, Inc. ("Okonite") for two and a half years. During that time, Mr. Mota earned a master's degree and was promoted several times. Mr. Mota took advantage of Okonite's tuition reimbursement program where he would be reimbursed 75% of his tuition as long as he stayed at Okonite for three years after he completed his degree. Mr. Mota voluntarily resigned to take a position at another company less than four months after he graduated. Okonite asked Mr. Mota to pay back the tuition in accordance with company policy.

Mr. Mota brings this action against Okonite under the Rhode Island Civil Rights Act,[1] alleging he was intentionally discriminated against based on his race and subjected to a hostile work environment. Okonite answered the complaint and

---

[1] Mr. Mota originally filed this state law claim in Rhode Island Superior Court, but Okonite removed it here because of the parties' diversity of citizenship.

filed a counterclaim against Mr. Mota for breach of contract and unjust enrichment related to his refusal to pay the tuition back. Before the Court is Okonite's Motion for Summary Judgment; for the reasons set forth below, the Court GRANTS Okonite's motion. ECF No. 18.

I. BACKGROUND

Mr. Mota is an American born male of Dominican descent. Okonite, a wire and cable manufacturing company, hired Mr. Mota in April 2015 as a general operator. Okonite promoted him to second shift foreman in July 2015 at a salary of $50,700 per year.

As Mr. Mota rose through the ranks, Okonite experienced a turnover of supervisory employees due to retirements, putting an extra strain on supervisors like Mr. Mota. He alleges in his complaint that he frequently was the only supervisor on second shift and was the only minority person who had to run a shift by himself. He alleges that he had to work weekends and more hours than any other foreman. Mr. Mota did supervise the second shift alone from December 2016 until a retiring employee was replaced on April 17, 2017. He reports that he worked the third most overtime hours compared to other shift supervisors.

Mr. Mota also reported abuse and a hostile work environment, mainly at the hands of Jon Bangs, another second shift foreman. He contends that Mr. Bangs told him and others that the only reason he was hired was because he was a minority. He alleges that he was told by numerous people that Mr. Bangs referred to him using a racial slur. Mr. Mota reported this behavior to Katie Guptill in Human Resources,

telling her that Mr. Bangs yelled at him. Mr. Bangs also reportedly told one of Mr. Mota's coworkers that he had reported the coworker for smoking marijuana. Mr. Bangs harassed Mr. Mota by regaling with inappropriate stories about his personal life. Mr. Mota never reported any of these issues to Okonite during his employment.

Still, Mr. Mota's career was going well. He availed himself of Okonite's tuition reimbursement program where the company agreed to reimburse 75% of an employee's tuition, which amount is forgiven if the employee remains with Okonite for three years after completing the program of studies. Mr. Mota opted to take an accelerated one-year Master of Business Administration ("MBA") program at Bryant University starting August 2016. During this time, Mr. Mota switched to third shift to accommodate his school schedule. This change, along with the increased school workload and the birth of his son, led to a decline in Mr. Mota's work performance. Okonite management addressed these issues, which Mr. Mota acknowledged, and noted at his next performance review that Mr. Mota's work had improved.

Okonite promoted Mr. Mota in August 2017 to Second Shift Superintendent and raised his salary to $60,000 per year. He took on additional responsibilities as the Safety Ambassador Coordinator. He completed his MBA at Bryant around the same time.

Mr. Mota began looking for another position and inquired within Okonite as well as applying to be an Operations Manager at Amazon. At that time, it did not appear that there were any opportunities for him to be immediately promoted at

3

Okonite as he had just been promoted. Two months later, Mr. Mota applied for a position with Rand-Whitney Group LLC and was hired in December of 2017 with an annual salary of $80,000, a $20,000 increase in pay. He accepted the position and gave almost two weeks' notice to Okonite to help with any transition.

On his last day, Ms. Guptill informed Mr. Mota that he had to pay back the balance of the tuition Okonite paid, $35,957.07. He had signed a contract permitting Okonite to withhold his final paycheck and apply it to this balance, so Mr. Mota owed a balance of $33,340.74. He has not made any additional payments.

Mr. Mota filed this suit against Okonite, alleging discriminatory treatment and a hostile work environment. Okonite moves for summary judgment and counterclaims that Mr. Mota is in breach of contract due to his failure to repay the $33,340.07 tuition loan.

## II.   STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must look to the record and view all the facts and inferences therefrom in the light most favorable to the non-moving party. *Continental Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). "Granting summary judgment is appropriate if the moving party 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by

4

relying on improbable inferences, conclusory allegations, or rank speculation." *Ingram v. Brink's, Inc.*, 414 F.3d 222, 228-229 (1st Cir. 2005). "In the summary judgment context, 'genuine' has been construed to mean 'that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.' Similarly, a fact is 'material' if it is 'one that might affect the outcome of the suit under the governing law.'" *Enica v. Principi*, 544 F.3d 328, 336 (1st Cir. 2008) (citations omitted).

## III. DISCUSSION

Mr. Mota recounts six situations as evidence that he was discriminated against: he was the only person, and the only minority person, who had to supervise second shift alone; he was required to work overtime when his white counterparts were not; he was required to take on additional duties without additional help; Okonite hired a less experienced white person and paid him a higher entry salary than Mr. Mota was paid; he was overlooked for a promotion; and he was harassed and bullied because of his race. The Court will consider each of these allegations in the context of Mr. Mota's claims.

### A. Disparate Treatment

In its motion, Okonite argues—and points to undisputed facts in the record—that Mr. Mota did not work more overtime than all his contemporaries and he was not the only foreman who worked a shift solo.

Mr. Mota's claims are in the nature of disparate treatment, and, therefore, the Court will apply the now-familiar burden-shifting framework found in *McDonnell*

5

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff must prove a prima facie case, which shifts the burden to the employer to show a legitimate and nondiscriminatory or non-retaliatory reason for the alleged adverse employment action. *Id.* at 802–803. Then, if the defendant meets its burden, the plaintiff must show that the proffered reason is a pretext for discrimination or retaliation. *Id.* at 804; *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003).

For Mr. Mota to show a prima facie case, he must present evidence that (1) he is a member of a protected class, (2) his job performance was satisfactory, (3) Okonite took some adverse employment action, and (4) replaced him with a comparably qualified person. *Id.* at 212-213. Establishing a prima facie case is a "small showing" that is "not onerous" and is "easily made." *Id.* at 213. Here, it is not disputed that Mr. Mota is a member of a protected class and was competent in fulfilling his job duties. His case fails, however, because he voluntarily resigned to take another position that paid more money and did not suffer an adverse employment action.

Essentially, Mr. Mota alleges constructive discharge; in this situation, a plaintiff must prove that his employer imposed "working conditions so intolerable [] that a reasonable person would feel compelled to forsake [his] job rather than to submit to looming indignities." *See Landrau–Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 613 (1st Cir. 2000) (citation omitted). "Typically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting [him], reducing [his] salary, or divesting [him] of significant responsibilities, or (2) withhold from the employee an accouterment of the

employment relationship, say, by failing to follow a customary practice of considering [him] for promotion after a particular period of service." *Blackie v. Maine*, 75 F.3d 716, 725–726 (1st Cir. 1996) (citations omitted). "To prove constructive discharge, a plaintiff must offer evidence of harassment at least as severe (if not more) than that required for a hostile work environment claim." *Hall v. FMR Corp.*, 667 F. Supp. 2d 185, 202 (D. Mass. 2009) ("[p]etty annoyances, minor workplace indignities, and hurt feelings do not make out a constructive discharge claim").

Turning to each of Mr. Mota's allegations, the Court finds that the undisputed evidence in this case does not reflect the severity of harassment required to prove constructive discharge. Mr. Mota complains that he was forced to get other employment because he was the only person, and the only minority, who had to supervise second shift alone. The fact that he had to work alone as a shift supervisor for a period of four months while Okonite sought a replacement after an employee retired was not so intolerable as to make him resign. And Mr. Mota's allegation that he was required to work overtime when his white counterparts were not is belied by the undisputed facts. Okonite has shown that Mr. Mota and the other foremen all worked significant amounts of overtime due to attrition, but he did not work anymore than most of the foremen. ECF No. 18-2 ¶¶ 102-109. On the issue of whether he was required to take on additional duties as Safety Ambassador, the record shows that the Plant Manager, Eric Dodge, offered him the coordinator position and he accepted. This position was an opportunity for Mr. Mota to take on a leadership role, not a punishment or an attempt to harass him. By all accounts, he thrived in the role.

Mr. Mota points to Mike Costa, who was hired as a foreman after he was at a slightly higher salary, but Mr. Costa had six years of seniority at Okonite over Mr. Mota, justifying his higher salary.[2] Mr. Mota was promoted three times during his two years of employment but alleges that he was overlooked for a promotion to Plant Superintendent in September 2017. Okonite had promoted Mr. Mota to Second Shift Superintendent the previous month. This is not an example of constructive discharge for failure to promote when Mr. Mota was frequently promoted.

Finally, as to Mr. Mota's assertion that Mr. Bangs, who was not Mr. Mota's supervisor but a fellow foreman, harassed and bullied him because of his race, the Court finds that Mr. Bangs' behaviors and comments, while reprehensible if true, do not rise to the level sufficient to create a hostile work environment leading to Mr. Mota's constructive discharge. Mr. Mota heard from unnamed others that Mr. Bangs made a derogatory comment, but that "cannot support an inference of pretext because it was one stray remark, and was made by a non-decisionmaker." *Velazquez-Fernandez v. NCE Foods, Inc.*, 476 F.3d 6, 11 (1st Cir. 2007); *González v. El Día, Inc.*, 304 F.3d 63, 69 (1st Cir. 2002) ("'[S]tray workplace remarks', as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus.").

---

[2] Okonite also points to records that show that Mr. Mota was paid a salary in line with his contemporaries, only slightly less than those with more seniority and relevant experience. ECF No. 18-2 ¶ 110-112.

Moreover, supporting the conclusion that Mr. Mota was not subjected to disparate treatment resulting in constructive discharge are several undisputed facts. Mr. Mota did not complain to anyone that he felt he had to leave because he was being discriminated against by Mr. Bang's actions or by being overworked and underpaid. He gave a long notice period before starting his new job at Rand-Whitney to make sure that Okonite was covered during the transition. He submitted an eloquently worded resignation letter, thanking Mr. Dodge, Ms. Guptill, and Okonite for the opportunities received and expressing his sadness to leave. ECF No. 18-2 ¶ 81. This evidence is undisputed and do not sound like Mr. Mota was a person laboring within intolerable working conditions.

The Court concludes that Mr. Mota did not suffer an adverse employment action and thus his disparate treatment claim fails to meet the initial proof of a prima facie case. The Court GRANTS Okonite's motion on that claim.

### B.   Hostile Work Environment

Because the Court has already found that the evidence in this case does not rise to the level of hostile work environment in its constructive discharge analysis, *see Hall*, 667 F. Supp. 2d at 202, Mr. Mota's claim for hostile work environment fails as well and Okonite's motion is GRANTED.

### C.   Okonite's Breach of Contract Claim

Mr. Mota does not dispute that he signed the tuition reimbursement program contract and does not dispute its terms. That contract required him to remain at Okonite "at least three (3) years . . . following [] completion of the course of study or

receipt of the associated degree" for the loan to be completely forgiven. There is no dispute that Mr. Mota quit his job four months after getting his MBA from Bryant University. And other than the fact that Okonite took his last paycheck as payment toward the loan, there is no dispute that Mr. Mota has not paid the loan back. Mr. Mota has breached his contract with Okonite; the Court GRANTS its motion as to the counterclaims involving the contract.

## IV.   CONCLUSION

There is no evidence that Mr. Mota's treatment at Okonite was discriminatory or hostile. He worked diligently during his time at Okonite, taking advantage of the multiple opportunities the company presented to him. He was paid comparably, worked a significant amount of overtime alongside his foreman colleagues during times of shorthandedness, and was commensurately promoted. He signed a contract that he would pay back the tuition loan from Okonite if he left within three years of completing his degree; because he left within four months, he owes Okonite the balance of the loan.

The Court GRANTS Okonite's Motion for Summary Judgment as to Mr. Mota's claims and to its counterclaims for breach of contract and unjust enrichment. ECF No. 18. Judgment shall enter for Okonite on all of Mr. Mota's claims, and for Okonite on its counterclaim against Mr. Mota in the amount of $33,340.74.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

January 4, 2022